UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Contour Design, Inc.

    v.                              Civil No. 09-cv-451-JL
                                    Opinion No. 2011 DNH 154
Chance Mold Steel Co., Ltd.
and EKTouch Co., Ltd.

**MEMORANDUM ORDER**

In May 2011, claims in this action by the plaintiff, Contour
Design, Inc., against defendants Chance Mold Steel Co., Ltd., and
EKTouch Co. were tried to a jury, which found in favor of Contour
on all of them, and awarded it the full amount of compensatory
damages it had requested, $7.7 million.  Contour has sued Chance,
which formerly manufactured computer mouse products for Contour,
and EKTouch, a related company, claiming that they
misappropriated Contour's trade secrets, and that Chance breached
a non-disclosure agreement ("NDA") with Contour, by selling their
own versions of ergonomic mouse products, known as the "Classic,"
the "Open," the "Professional," and the "Ergoroller."[1]  This
court has jurisdiction over this action between Contour, a
Delaware corporation with its principal place of business in

---

[1]For ease of reference, this order will use "Chance" to
refer collectively to Chance and EKTouch.

Windham, New Hampshire, and the defendants, Taiwanese
corporations, under 28 U.S.C. § 1332(a)(2) (diversity).

In its amended complaint, Contour had sought other relief
besides damages, including (1) a permanent injunction preventing
the defendants from marketing or selling their allegedly
infringing products, and (2) exemplary damages and attorneys'
fees under New Hampshire's version of the Uniform Trade Secrets
Act, which authorizes those remedies in cases of "willful and
malicious misappropriation," N.H. Rev. Stat. Ann. §§ 350-B:3, II,
350-B:4, I.  Because the parties agreed that the appropriateness
of this additional relief was for the court to decide, they did
not present evidence to the jury going solely to that issue.  So
this court has scheduled an evidentiary hearing on the
appropriateness of the requested permanent injunction and
received briefing from the parties on that issue.  Contour has
objected to much of the evidence on which Chance relies in
opposing the permanent injunction, specifically in arguing that
it should not enjoin the sales of one of the ErgoRoller.

As explained in greater detail _infra_, those objections are
sustained, with one minor exception.  Chance cannot introduce
evidence at the hearing that it failed to disclose to Contour
until, at best, more than five months after the deadline for
disclosing its trial witnesses and exhibits, and less than three

2

weeks before the scheduled evidentiary hearing, particularly in the absence of any justification for the delay.

## I.    **Procedural history**

Following the verdict--and the appearance of new counsel on behalf of Chance--the parties filed a joint statement, at the court's direction, setting forth their respective positions on "whether and when the court should conduct an evidentiary hearing and receive briefing" on the outstanding claims for relief. Order of Aug. 18, 2011, at 1 (document no. 200).  The parties agreed that the court should hold an evidentiary hearing on whether Contour would suffer irreparable harm without the requested permanent injunction, but Contour wanted the hearing limited to that issue.  Chance, in contrast, argued that the hearing should embrace, <u>inter alia</u>, the "scope of [the permanent] injunction" and the claim for willful and malicious misappropriation.  <u>Id.</u> at 2.

In resolving this dispute, the court ruled that, because the parties agreed that an evidentiary hearing was needed on the issue of irreparable harm, the court would "not, at this point, limit the hearing to solely [that] issue," but would "allow either party to submit evidence on any of the issues identified in the joint submission--subject to the court's ability to

3

disregard that evidence if either (1) the party presenting the evidence waived the opportunity to present it at trial, or (2) the evidence is relevant solely to an issue that was necessarily decided by the jury in reaching its verdict."[2]  Id. The court scheduled the hearing for October 3, 2011.  The court also directed Contour to submit a proposed permanent injunction order, together with a supporting memorandum, and directed Chance to submit a memorandum in opposition.

In its opposition, filed on September 16, 2011, Chance argued, in relevant part, that the permanent injunction "should not affect Chance's ErgoRoller product," which represents neither a misappropriation of Contour's trade secrets nor a breach of the NDA because all of its components, including its firmware, were developed independently of the products Chance had manufactured for Contour.  In support of this proposition, Chance's memorandum relied on a variety of evidence that had not been introduced at the jury trial, including (1) the anticipated testimony of a witness, Chih-Ming "Jimmy" Tsao, that he had developed the source

---

[2]The court did make an exception for the issue of "equitable defenses" to the permanent injunction, ruling that Chance would not be allowed to present any evidence on that issue at the hearing because it had not raised any such defenses in its answer to the amended complaint.  Order of Aug. 18, 2011, at 2-3 (document no. 200) (citing Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 069, 21-26).

code for the ErgoRoller's firmware without having access to any
code that Contour had provided to Chance, (2) corroborating
evidence, "including such things as source code, binary code, and
development files," and (3) the proffered testimony of Chance's
expert witness, Dr. Mark Blackburn, that "[h]e has compared the
ErgoRoller source code and the Contour source code and determined
that they are not the same, nor are they derived from each
other."  Blackburn did not give that opinion when he testified at
the jury trial; Tsao did not testify at the jury trial at all.
Chance's memorandum in opposition to the permanent injunction
also relied on the anticipated testimony of two other fact
witnesses, Mei-Ling Wang (Chance's president) and Shiau-Chung
"Kevin" Kao (one of Chance's engineers), to the effect that the
mechanical and electronic components of the ErgoRoller were
designed independently of Contour's products.  These witnesses
had testified at the jury trial, but not to that effect.

    With leave of court, Contour filed a reply to Chance's
opposition to the permanent injunction.  Contour argued, among
other things, that Chance was improperly relying on evidence that
it had never disclosed, including Tsao's anticipated testimony
and the corroborating evidence--most notably the purported
ErgoRoller source code itself--as well as Blackburn's opinion
that this source code was not the same as or derived from

Contour's source code.[3]  Contour also objected to the proposed testimony of Wang and Kao, arguing that it "could have and should have been presented at the time of the [jury] trial."

On the same day that Contour filed its reply, the parties filed a stipulation requesting that this court "decide disputes related to evidentiary objections" raised in connection with the upcoming hearing by September 28, 2011.  The stipulation stated:

> Without such a decision the parties will not have proper context to prepare for the October 3[] hearing. Specifically, [Chance's] witnesses will board planes in Taiwan on [September 29] bound for the United States. Thus, the appropriate scope of testimony anticipated for the hearing should be understood before boarding commences.

The court granted the stipulation, ordering Chance, in its coming surreply, to "address, at a minimum, whether [it] complied with [its] obligations, under the Federal Rules of Civil Procedure and this court's prior orders, to disclose the evidence set forth in their memorandum [in opposition to the permanent injunction] and (2) if not, why [it] should nevertheless be able to present [that evidence] at the evidentiary hearing."  Order of Sept. 29, 2011. Chance has filed a surreply addressing those, and other, issues.

_____

[3]Contour's reply attached an email its counsel had received from counsel for Chance on September 14, 2011, listing witnesses that it expected to testify and documents that it expected to introduce at the evidentiary hearing, but without describing the anticipated testimony or identifying the documents in any detail. Document no. 207-1.

## II.  **Analysis**

At the upcoming hearing, Chance cannot introduce much of the challenged evidence, i.e., the proffered testimony of Tsao and Blackburn to the effect that the ErgoRoller was developed independently of Contour's products, and the documents purportedly corroborating that testimony.  With one (seemingly minor) exception discussed infra, Chance did not disclose any of this evidence to Contour until, at the earliest, September 14, 2011, see note 3, supra, which was nearly four months after the jury trial had commenced; some of the evidence was not disclosed until the day Chance filed its memorandum in opposition to the permanent injunction, on September 16, 2011; and some of the evidence, so far as the court can tell, has still not been properly disclosed.

Despite Chance's suggestion to the contrary, this violates, at a minimum, Rule 26(a)(3) of the Federal Rules of Civil Procedure and Local Rule 16.2(a) as to Tsao's anticipated testimony and the "supporting" documents, and Rule 26(a)(2)(B) and this court's scheduling order as to Blackburn's newly proffered opinion.  Chance has also not shown, nor can this court find, that these violations were substantially justified or harmless, or that there is any other recognized reason to allow Chance to present this late-disclosed evidence at the hearing.

7

**A.    Chance's violation of the disclosure requirements**

**1.    Tsao's testimony and the supporting exhibits**

Under Rule 23(a)(3)(A) of the Federal Rules of Civil

Procedure:

> a party must provide to the other parties and promptly
> file the following information about the evidence that
> it may present at trial other than solely for
> impeachment:
>
> (i) the name and, if not previously provided, the
> address and telephone number of each witness . . . ;
>
> . . .
>
> (iii) an identification of each document or other
> exhibit . . . .

Rule 26(a)(3)(B) provides that "these disclosures must be made at

least 30 days before trial."  Similarly, Local Rule 16.2 provides

that "[f]inal pretrial statements shall be filed in accordance

with Rule 26(a)(3) and, in addition to the requirements of that

rule, shall contain," in relevant part, "the name and, if not

previously provided, the address and telephone number of each

witness" and "a list of all exhibits to be offered at trial."

Chance's disclosure of Tsao and the documents purportedly

supporting his testimony did not comply with these rules.

Although Chance filed a final pretrial statement, including a

list of its anticipated witnesses and exhibits, on April 6, 2011

(more than thirty days before the jury phase of the trial

8

commenced, on May 17, 2011), neither Tsao nor any of the exhibits supporting his anticipated testimony appeared on those lists. Nor does Chance claim to have disclosed its intention to call Tsao as a witness or to introduce any of the challenged exhibits until, at the earliest, September 14, 2011––nearly five months after the deadline for doing so and, for that matter, less than 30 days prior to the scheduled evidentiary hearing on Contour's request for a permanent injunction.[4]  Moreover, even the disclosures Chance has provided to date do not comply with Rule 26(a)(3)(A), because they do not include Tsao's address and telephone number or an "identification of each document" (merely describing them as "such things as source code, binary code, and development files consistent with [Tsao's] testimony").

### 2.   Blackburn's proffered opinion

The same is true of Blackburn's proffered opinion that the source code for the ErgoRoller is not the same as or derived from

---

[4]Chance does not argue that, for purposes of calculating the deadline for its disclosure of Tsao or the documents supporting his testimony, the date of the "trial" under Rule 26(a)(3)(B) is the date of the evidentiary hearing on the non-jury relief, rather than the date of the jury phase of the trial.  The court therefore need not consider that point, but notes that the disclosure––coming, at best, 18 days before the evidentiary hearing––was late either way.  The court also notes that Chance's filings repeatedly characterize the upcoming evidentiary hearing as "the second phase of trial."

"Contour source code."  Under Rule 26(a)(2)(B), a witness--like Blackburn--who is "retained or specially employed to provide expert testimony in the case" on behalf of one of the parties must provide the other parties with a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  This disclosure must occur "at the time[] . . . that the court orders," Fed. R. Civ. P. 26(a)(2)(C), which, in this case, was December 1, 2010, the date this court's amended scheduling order set as the deadline for Chance's expert report.  While Chance provided Contour with an expert report from Blackburn by that deadline, the report did not state his opinion that the ErgoRoller's source code was not the same as or derived from Contour's source code.  To the contrary, Blackburn acknowledged in both his deposition and trial testimony that, because he did not have access to the source code for the ErgoRoller's firmware, he had not compared it to the source code for the firmware for any Contour product.

**B.    The effect of the belated disclosures**

By operation of Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." So, as the court of appeals has stated, "the baseline rule is that the required sanction in the ordinary case is mandatory preclusion" of late-disclosed information. Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). In deciding whether to impose that remedy, the court of appeals has endorsed considering "an array of factors," including "the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the sanctioned party's need for the precluded evidence." Id. at 30 (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)). Here, none of these factors suggests that this court should eschew the "baseline rule" and impose any remedy other than precluding the previously undisclosed evidence.

### 1. Justification

First, the only justification Chance offers for its belated disclosure of Tsao is an unauthenticated statement in its surreply that he "was unable to testify regarding the contents

11

and development of the source code since he was under contract with Heng-Yu"--which according to Chance is a "software contracting firm" that hired Tsao to develop the firmware for the ErgoRoller--and that Tsao, who lives in Taiwan, "could not have traveled to court to testify without a visa," which he did not obtain "until recently."  This statement raises more questions than it answers about why Chance did not, so far as the court can tell, even mention Tsao's name to Contour until two weeks ago.

Chance does not explain how Tsao's contract with Heng Yu would have prevented him from testifying (or, even if it did, when that contractual obligation expired so that Tsao is suddenly available to testify now).  Chance also does not explain why Tsao could not have obtained a visa to travel to the United States to testify at the jury trial (even though he has apparently been able to obtain one to travel to the United States to testify at the evidentiary hearing).

Most importantly, though, Chance does not explain how Tsao's alleged unavailability to testify at the jury trial had any effect on Chance's ability to disclose Tsao as a potential witness before the jury trial or, for that matter, at any point prior to September 14, 2011.  Indeed, Chance does not say what a party trying to justify a belated disclosure of a witness would be expected to say:  that it did not and could not have learned

12

of Tsao's knowledge of relevant information until after the
applicable deadline.[5] Cf. Harriman, 627 F.3d at 30 (finding a
party's late disclosure of a witness unjustified where he "knew
during discovery that [a person] existed who had information that
could support his claims, and yet he did nothing whatsoever to
find that [person] until after discovery closed").

That, however, is Chance's attempted justification for its
failure to disclose the purported source code for the ErgoRoller
as a trial exhibit (as well as Blackburn's opinion that this
source code is not the same as "Contour source code"): that the
ErgoRoller's source code "came into Chance's possession only
after the jury phase of the trial had ended." Chance explains
that Wang, its president, "will testify that Chance could not
obtain access to the source code because it was in possession of

---

[5]That would be a difficult claim to make, of course, since,
according to Chance, Tsao "developed the ErgoRoller source code
between the fourth quarter of 2008 and the first quarter of
2009," which was more than two years before the final pretrial
disclosure deadline. Chance does not try to explain why--or,
indeed, even assert that--it did not find out about Tsao's
claimed role in the development the ErgoRoller's firmware, which
has been a crucial issue in this case since it was filed in
December 2009, in time to disclose him any earlier than September
14, 2011. In any event, the court of appeals has held that even
the "late discovery of a new potential witness cannot on its own
require the court to disregard its previously set timetable."
Primus v. United States, 389 F.3d 231, 236 (1st Cir. 2004).

Heng Yu," which would not "release it without unreasonable compensation, essentially holding it hostage."

As in the case of its attempt to excuse its failure to make a timely disclosure of Tsao, Chance does not explain how things have changed in the intervening four months so that it now possesses the source code to use as evidence at the upcoming hearing (and as a basis for a new opinion by Blackburn). Nor does Chance relate any efforts on its part to obtain the source code prior to the jury trial--aside from a conclusory assertion that it "used due diligence but failed." In any event, the court of appeals has held in no uncertain terms that "[t]he fact that a party had not actually obtained certain documents before the discovery deadline does not excuse a violation" of the final pretrial disclosure requirements of Rule 26(a)(3).[6] Klonoski v. Mahlab, 156 F.3d 255, 272 (1st Cir. 1998) (finding no

---

[6]This proposition is fatal to Chance's suggestion that it did not need to disclose the ErgoRoller's source code earlier because it was not within Chance's "possession, custody, or control." The point is not that Chance failed to produce the source code in response to a discovery request encompassing it. The point is that Chance failed to disclose the source code as a trial exhibit at least 30 days prior to trial. Chance also does not say when the ErgoRoller's source code came into its possession, but that seems to have happened before September 14, when Chance first disclosed its possession of the source code to Contour (by September 16, Chance had filed a lengthy memorandum stating, among other things, that Blackburn had already compared that source code to Contour's).

justification for defendants' failure to disclose documents
before using them at trial even though their counsel did not
obtain them until two days earlier, where, one year prior,
defendants had the same information that ultimately led them to
the documents yet failed to explain why their attempt to get them
"did not come to fruition until the trial was near completion").

Chance also advances what seem to be two other attempted
justifications for its belated disclosures, but those are without
merit as well.  Chance says it "had hoped that Kevin Kao's
testimony would be able to establish independent development of
the ErgoRoller firmware" at trial, obviating the need for either
Tsao's testimony or the alleged ErgoRoller source code.  As
Chance appears to acknowledge, though, it was unable to
demonstrate at trial that Kao had any personal knowledge of how
that firmware was developed (which could not have come as a
surprise, given Kao's testimony that he was not personally
involved in its development).  So Contour's "hope" that Kao would
nevertheless be able to testify to that fact was completely at
odds with the Federal Rules of Evidence, see Fed. R. Evid. 602,
802, and provides no excuse for its failure to disclose Tsao as a
witness or the source code as an exhibit.  Indeed, the court of
appeals has warned that, when a party holds off on making
pretrial disclosures based on its view that future developments

15

in the case will make them unnecessary, that party "assume[s] the risk" that things might turn out differently and force it to proceed without the undisclosed evidence.  LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002).

Chance also invokes Rule 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may order the trial of an action on the merits to be advanced and consolidated with the hearing."  Chance argues that, under this rule, "the parties should normally receive clear and unambiguous notice of the court's intent to consolidate the trial and the injunction hearing either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases," Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) (quotation marks and bracketing omitted), and that Chance never received such "notice."  But Rule 65(a)(2), and its notice requirement, apply when a court renders "an expedited decision on the merits" of an action.  Id.  That is manifestly not what happened (or is happening) here.

This court did not "consolidate" the trial on the merits with the preliminary injunction hearing, nor render an "expedited decision."  The preliminary injunction hearing, conducted by Magistrate Judge McCafferty, occurred in August 2010 (and was

16

followed by this court's overruling Chance's objections to Judge McCafferty's report and recommendation that a preliminary injunction issue, as well as the rejection of Chance's appeal of that decision by the court of appeals, see infra note 8), while trial on the merits of Contour's claims (and Chance's counterclaim) for damages took place before a jury nearly six months later, in May 2011.  The jury trial happened after considerable discovery, full-blown summary judgment practice (including cross-motions, oral argument, and comprehensive written rulings) and similar treatment of the parties' motions in limine.  So this is plainly not a case where, as contemplated by Rule 65(a)(2), the entire action was decided in the preliminary injunction hearing.  Chance's suggestion to the contrary is puzzling at best.  Chance's utter failure to justify its belated disclosures of Tsao and the alleged ErgoRoller source code supports the preclusion of that evidence at the hearing.

### 2.  Harmlessness

Second, Chance has also failed to show that its belated disclosures were harmless.  As Contour points out, it had never even heard Tsao's name until the September 14 email from Chance's counsel and, indeed, Wang had testified in her deposition that the firmware for the ErgoRoller was developed by someone with a

17

different first name, "Jackie" (Wang was unable to give the person's last name).  Moreover, in response to a motion in limine that Contour had filed to prevent Chance from introducing undisclosed evidence of allegedly new firmware for its products, Chance stated that it did not intend to introduce the source code for its products because Chance did not possess it.  See Contour Design, Inc. v. Chance Mold Steel Co., ___ F. Supp. 2d ___, 2011 DNH 078, 16.  So the court granted the motion in limine because Chance had "more or less assented to the relief sought."  Id.

Chance did not so much as hint that it was trying to get the source code or that, if Chance did, that it would seek to introduce the source code at trial[7].  The provenance of the ErgoRoller's source code was, of course, an issue crucial to Contour's claim that, by marketing and selling the product, Chance is misappropriating Contour's trade secrets and breaching the NDA.  See Contour Design, 2011 DNH 069, 19-20 (denying Chance's motion for summary judgment on Contour's claim that the

_____

[7]As just discussed, Chance has provided no details for its assertion that it "used due diligence but failed to obtain the source code before trial," but, if that characterization is accurate, then the fact that Chance said nothing to Contour about those efforts actually hurts Chance's position here.  See Harriman, 627 F.3d at 31 (finding prejudice from plaintiff's late disclosure where he "took no steps to minimize the harm caused," such as by informing defendants that he was trying to locate additional witnesses).

ErgoRoller misappropriated its trade secrets, given "factual disputes going to whether the Ergo misappropriates the firmware from" a Contour product); see also Contour Design, ___ F. Supp. 2d ___, 2011 DNH 078, 22 (observing that Contour's theory "that Chance misappropriated its firmware . . . ha[s] been front and center in this case since shortly after the amended complaint").

There would be obvious and grave prejudice to Contour, then, in allowing Chance to introduce the source code at the evidentiary hearing when it previously represented that it had no intention of introducing the source code at trial, or to elicit an opinion from its expert witness that the source code differs from Contour's when he previously said that he had formed no such opinion, or to call an alleged witness to the development of the source code who had been previously identified only by a different first name. Cf. Fed. R. Civ. P. 37 advisory committee's note (1993) (citing "the inadvertent omission from a [pretrial] disclosure of the name of a potential witness known to all parties" as an example of a harmless failure to disclose). As the court of appeals has observed, these sorts of "eleventh-hour change[s]" are often "seriously prejudicial to the opposing party" and, if allowed, force that party to "scrap much of its earlier preparation in favor of a frantic, last-minute scramble to investigate the emergent witnesses, counter their testimony,

19

and rebut a new and different case concept," all during "the last few days of the pretrial period."  Thibeault v. Square D Co., 960 F.2d 239, 246-47 (1st Cir. 1992).  Those observations are right on the money here.  See also Lohnes v. Level 3 Commcn's, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (calling the disclosure of a new witness after the adverse party had already prepared its case, as evidenced by its moving for summary judgment, "exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate").

Chance represents that it has "offered to continue the hearing if Contour wishes to review the evidence in further detail and have an expert analyze it," or to take the depositions of Chance's witnesses, but that does not serve to eliminate the prejudice to Chance.  Those steps would further increase the expense and delay of this litigation--and both have already been significant--to Contour, at no fault of its own.  Cf. Klonoski, 156 F.3d at 273 (finding that a continuance of trial to permit the deposition of the recipient of previously undisclosed correspondence, who was located in Poland and did not speak English, was not a "practical alternative" to precluding the correspondence due to "the distances involved and [] language problems").  Indeed, the whole point of Contour's request for a permanent injunction is that Chance's marketing and sales of the

20

infringing products, including the ErgoRoller, are causing
Contour irreparable harm.[8]  Contour should not face a further
setback in having that request heard in the form of additional
discovery necessitated solely by Chance's unjustifiably late
disclosures.  "If continuances were granted as a matter of course
for violations of Rule 26[], the rule could always be disregarded
with impunity."  Thibeault, 960 F.2d at 246.  While this court
recently observed that a continuance still "may be the
appropriate remedy for the late disclosure of [evidence] in some
circumstances," Westerdahl v. Williams, ___ F. Supp. 2d ___, 2011
DNH 136, n. 6, this is not such a case, for the reasons just
explained.  The prejudice to Contour from the late disclosures
also supports the preclusion of the evidence.

### 3.   Effect on this court's docket

Third, for much the same reasons, the effect of the late
disclosure on this court's docket also cuts in favor of
preclusion.  Indeed, according to the court of appeals, it is
enough that Chance has disregarded the deadlines for pretrial

---

[8]While the preliminary injunction this court entered against
Chance remains in place, having been recently affirmed by the
court of appeals, the injunction does not extend to the
ErgoRoller.  See Contour Design, Inc. v. Chance Mold Steel Co.,
No. 09-451, 2010 WL 4774283, at *3-*5 (D.N.H. Oct. 22, 2010),
rept. & rec. adopted, 2010 WL 4736428, aff'd, ___ F.3d ___, No.
10-2415, 2011 WL 3505594 (1st Cir. Aug. 11, 2011).

disclosures set forth in the rules and this court's scheduling order.  See Harriman, 627 F.3d at 31 ("[w]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised") (quotation marks omitted).

As just discussed, there is also the fact that, if Chance is allowed to use a previously undisclosed witness, expert opinion, and supporting documents, Contour would almost certainly have to be allowed the opportunity to investigate that evidence and prepare its own new evidence in response before going forward with any hearing.  That figures to be a time-consuming process necessitating a substantial and disruptive continuance of the hearing--which is scheduled to occur just five days from now--and a further delay in the ultimate resolution of this case, which has been pending for nearly two years.  "District courts have an interest in managing their dockets without such disruptions." Id.; see also Macaulay v. Anas, 321 F.3d 45, 52 (1st Cir. 2003) (noting that, where a party's belated disclosure pushes the district court into a "Hobson's choice:  either to force [the adverse party] to trial without appropriate preparation or to reopen discovery and vacate the trial assignment . . . , it is surpassingly difficult to fault the court for refusing to overlook the [disclosure] violation") (parenthetical omitted).

### 4.   The history of the litigation

Fourth, the history of the litigation also cuts in favor of preclusion.  While Chance has not, so far as this court is aware, missed any other case management deadlines, it has repeatedly accused Contour of failing to disclose information and sought to preclude it as a result.  Indeed, Chance took that tack in at least three prior stages of this litigation:  at the preliminary injunction hearing, when it sought to prevent Contour from presenting evidence because it had not yet completed its discovery responses, see Contour Design, ___ F. Supp. 2d ___, 2011 DNH 078, 22 n.8; at summary judgment, when it premised its motion for that relief on Contour's alleged failure to identify its trade secrets and confidential information in its discovery responses, see Contour Design, 2011 DNH 069, 17 n.10; and in its motions in limine, where it sought to prevent Contour from introducing evidence at trial that had allegedly not been produced in discovery, see Contour Design, ___ F. Supp. 2d ___, 2011 DNH 078, 29.[9]  Of course, Chance was free to pursue those

---

[9]In a similar vein, Chance also argued--successfully--that Contour could not raise a statute of limitations defense to Chance's counterclaim that Contour had not pled in its reply, see Contour Design, 2011 DNH 069, 21-26, and argued--unsuccessfully-- that Contour should not be allowed to pursue certain theories at trial because they had not been pled in its amended complaint, see Contour Design, ___ F. Supp. 2d ___, 2011 DNH 078, 21-24.

tactics.  But, having repeatedly sought to preclude Contour's
evidence as undisclosed throughout this litigation, Chance cannot
now seriously claim that preclusion is an inappropriate remedy
for its own violations of the disclosure rules.

**5.   Chance's need for the evidence**

Fifth, and finally, this court must consider whether
Chance's need for the belatedly disclosed evidence cuts for or
against preclusion.  As the court of appeals has cautioned,
though, situations where a court must allow late-disclosed
evidence based "on a sanctioned party's need for precluded
evidence are rare, and seldom based on that factor alone."
Harriman, 627 F.3d at 32.  This case does not fit into that
narrow category.

While Chance argues that "the source code and development
history for the ErgoRoller firmware . . . may remove all doubt
regarding the ErgoRoller's independent development," that
proposition––even if accepted––does not establish the sort of
"need" for the evidence necessary to allow its introduction even
if it has not been timely disclosed.  See id. (suggesting that
precluding the evidence must be "tantamount to dismissal" of the
offending party's claim or defense).  The court of appeals has
also instructed that the offending party's need for the evidence
cannot itself stave off preclusion where the late disclosure

24

"could be viewed as strategic." Id.  That description fits here, in light of the many unexplained facets of Chance's late disclosure already discussed.

III. **Conclusion**

Accordingly, after due consideration of the applicable factors, this court concludes that preclusion is the appropriate sanction for Chance's failure to make timely disclosures of the testimony of Tsao, the purportedly supporting documents (including the source code for the ErgoRoller), or Blackburn's opinion that the source code from the ErgoRoller is not based on or derived from Contour source code.  Chance will not be permitted to introduce any late-disclosed witnesses, documents, or expert opinions at the evidentiary hearing.[10]

The disclosure rules, however, have no effect on Chance's ability to call either Wang or Chao as a witness at the hearing, because both of them appeared on Chance's trial witness list. Contour protests that, because these witnesses did in fact testify at the jury trial, they should not be allowed to testify to different or additional facts at the evidentiary hearing.

_____

[10]The court notes that Contour's reply also challenges other categories of documents as undisclosed, including "CAD files," but, despite the court's order, Chance's surreply does not address the admissibility of that evidence.

This court is not aware of any rule of disclosure or discovery that prevents a witness from giving varied testimony at different stages of a proceeding.  Of course, principles of sound advocacy generally counsel against such evidence, since changing stories (particularly by interested witnesses) are rarely too convincing. But that is a problem that, if it arises, goes to the weight that the court, sitting as the finder of fact at the evidentiary hearing, gives to the new testimony, rather than to its admissibility.

For the foregoing reasons, Contour's objections, as set forth in its reply memorandum, to Chance's anticipated evidence, as set forth in its opposition to Contour's request for a permanent injunction, are SUSTAINED as to all of the challenged evidence but the testimony of Wang and Kao, as to which they are OVERRULED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 28, 2011

cc:  Lawrence L. Blacker, Esq.
     Peter G. Callaghan, Esq.
     David H. Fingerman, Esq.

26

```
Daniel S. Mount, Esq.
Felix J. D'Ambrosio, Esq.
John R. Schaefer, Esq.
Kathryn G. Spelman, Esq.
Kevin M. Pasquinelli, Esq.
Thomas J. Moore, Esq.
```