```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Contour Design, Inc.

    v.                                          Civil No. 09-cv-451-JL

Chance Mold Steel Co., Ltd.
and EKTouch Co., Ltd.

## MEMORANDUM ORDER

Defendants Chance Mold Steel Co., Ltd., and EKTouch Co., Ltd. (collectively, "Chance") have moved to stay, or, in the alternative to clarify, the permanent injunction issued against them in this action. Order of Dec. 16, 2011. The injunction prohibits Chance from making certain ergonomic computer mouse products in violation of a non-disclosure agreement (the "NDA") between the plaintiff, Contour Design, Inc, and Chance, which had served as the exclusive manufacturer of Contour's computer mouse products for several years. For the reasons explained infra, the motion to stay is denied while the motion to clarify is granted insofar as this order provides the sought-after clarification.

Section 1 of the NDA prohibits Chance from using Contour's "Confidential Information" without its consent, while section 3 of the NDA prohibits Chance from making any product "derived from or based on the Product." The NDA defines "Confidential Information" to include Contour's designs "relating to computer

mouse products and related materials," which are in turn defined as the "Product."  Contour alleged that Chance was violating these provisions by making and selling, among other products, an ergonomic mouse called the "ErgoRoller," and sought a permanent injunction against that activity.  Chance, however, claimed that it had "independently developed" the ErgoRoller so that making or selling it was not a breach of the NDA.

To resolve this dispute, the court received briefing from the parties and conducted a two-day evidentiary hearing.  (This was after the court had presided over an eight-day jury trial on Contour's claims for damages, which resulted in a verdict against Chance on all of those claims--including those alleging that it had breached the NDA--and an award of $7.7 million in damages.) Based on the evidence received at the hearing, as well as at the jury trial, the court issued extensive and detailed findings of fact and rulings of law.  Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 214.  In relevant part, the court found that Chance had used Contour's confidential information--specifically, the electronic files Chance had used to produce the molds for making one of Contour's products, the "Free"--to make the ErgoRoller and, furthermore, that the ErgoRoller was "derived from or based on" the Free.  Id. at 28.  Because this amounted to a breach of both section 1 and section 3 of the NDA, the court

granted Contour's request for a permanent injunction that, <u>inter alia</u>, prevented Chance from making or selling the ErgoRoller until the NDA expires, on June 30, 2015.  Chance has filed a motion to stay the injunction pending its anticipated appeal or, in the alternative, to clarify it.

**Motion to stay**

"While an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may . . . suspend an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(c).[1]  As Chance points out, whether to grant this relief depends on a number of factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

---

[1]Though Rule 62(c), by its terms, applies only "[w]hile an appeal is pending," most authorities have rejected the view that a court cannot stay an injunction under the rule until an appeal has been filed, at least so long as there is reason to believe an appeal is forthcoming.  <u>See</u> 11 Charles Alan Wright <u>et al.</u>, <u>Federal Practice and Procedure</u> § 2094, at 516-17 & n.29 (2d ed. 1995) (citing cases).  Here, Chance has yet to file an appeal, but says it plans to, so the court will consider its motion under Rule 62(c) (and ultimately need not decide whether the rule applies in the absence of an actual appeal, since the motion is being denied anyway).

the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  Relief under Rule 62(c) generally requires a showing of "a substantial likelihood of success on the merits upon appeal," and "the burden of meeting this standard is a heavy one." 11 Wright, supra, § 2904, at 502-05 (footnotes omitted).  Chance has not come close to meeting that standard here.

In arguing that it is likely to succeed on appeal, Chance challenges certain findings this court made in support of the injunction.  On appeal, "[a] district court's findings of fact after trial 'must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.'" Monahan v. Romney, 625 F.3d 42, 46 (1st Cir. 2010) (quoting Fed. R. Civ. P. 52(a)(6)).  It follows that an appellant "who challenges a district court's findings of fact, arrived at after a bench trial, faces a steep uphill climb." Id. (quotation marks omitted).  Chance's argument that it is likely to win its appeal does not acknowledge this formidable standard, and it is fatal to Chance's request to stay the injunction.

First, Chance argues that "the only relevant evidence in the record" contradicts the finding that it made the ErgoRoller by using the electronic files used to make the Free for Contour.  As

the court explained, this finding was based principally on an inference that arose from the facts that (a) Chance had access to those files while it was designing the ErgoRoller, and (b) the ErgoRoller is similar to the Free.  See Contour Design, 2011 DNH 214, 48.  Chance does not challenge the logic behind this inference, which is well-recognized in the case law.  See id.

Instead, Chance argues that there was no evidence that the engineer it identified as having designed the physical shape of the ErgoRoller, "Mhaco" Chiang, did any work on the Free, and that the evidence was in fact to the contrary.  Even if this were correct, though, it would do nothing to change the undisputed fact that Chiang (and everyone else at Chance) had <u>access</u> to the files used to create the Free while it was creating the ErgoRoller, so the inference that Chance used those files to do so would still hold up.  Since it was that inference which supported the court's finding that Chance's making the ErgoRoller amounted to a breach of section 1 of the NDA, and should be enjoined, Chance's claim that Chiang never worked on the Free will not cause it to prevail on its appeal from the injunction, even if taken at face value.[2]  As recognized in the caselaw cited

---

[2] This is to say nothing of the fact that, even if Chance could show clear error in the finding that it used Contour's confidential information to make the ErgoRoller, the injunction would <u>still</u> be appropriate--and Chance's appeal from it unlikely

in this court's findings and rulings, direct evidence of the defendant's use of the plaintiff's protected information, in the form of "direct proof of the flow of [the] information inside the defendant's company" or otherwise, is not necessary to find that the defendant in fact used the information. Sokol Crystal Prods., Inc. v. DSC Commnc'ns Corp., 15 F.3d 1427, 1432 (7th Cir. 1994); see also Contour Design, 2011 DNH 214, 48 (citing additional cases).

In any event, Chance's challenge to this court's finding that Chiang worked on the Free is misplaced. In particular, Chance faults the court for basing this finding on the testimony of Contour's president, Steven Wang, arguing that he lacks personal knowledge of the work Chiang did for Chance. But what the court relied on was Steven Wang's testimony that he discussed finalizing the design of the Free with Chiang, a new engineer Chance had recently hired. Contour Design, 2011 DNH 214, at 11-12. It is certainly a permissible inference from that testimony that, after this conversation, in August 2008, Chiang proceeded to do work on the Free before it was released in January 2009.

---

to succeed--because the court found that Chance's manufacture of the ErgoRoller violates section 3 of the NDA as well. See infra at 10-11.

Furthermore, while Chance argues that its general manager, Mei-Ling Wang, testified that Chiang did not work on the Free, that was not in fact her testimony, as the court specifically noted.[3] Id. at 49-50. Regardless, the court was not bound to accept Mei-Ling Wang's testimony on this point, in light of the circumstantial proof that Chiang *did* work on the Free.

In a further mischaracterization of Mei-Ling Wang's testimony, Chance argues that she "explained that the electronic files used to create molds for a new product are not made by modifying the CAD files that had been used to create molds for an old product." As the court specifically noted, Mei-Ling Wang did *not* testify to that, despite Chance's counsel's best efforts to elicit that testimony through leading questions. Id. at 50-51. And even if she had, it would not have been clearly erroneous for

---

[3] In the portions of Mei-Ling Wang's testimony cited by Chance in support of its motion to stay, she denied that Chiang knew about the removable roller bar that Contour had originally planned to incorporate in the Free. She did not deny that Chiang had worked on the Free--despite Chance's statement in its pre-hearing filing that she would. Chance also now points to Mei-Ling Wang's testimony that Chiang "never saw any drawings that were done by Chance for the RollerMouse Free that was supposed to have the removable bar." But this testimony is at best ambiguous as to whether Chiang ever saw the electronic files used to make the molds for the final version of the Free (which did not have a removable bar) and, again, the court was not bound to credit it anyway. Nor, as also just discussed, was direct proof that Chiang personally saw the designs for the Free necessary to find that Chance used them to make the ErgoRoller.

7

the court to reject that testimony in favor of Steven Wang's testimony that the electronic files "are the critical parts to make any tooling changes or a new set of tools." Id.  Chance also states that "[t]he mold design process simply does not work this way," but this statement is unaccompanied by any citation to the record--which was inevitable because, as the court also specifically noted in the findings and rulings, there is no support for this proposition in the record.  Id. at 50 & n.14.

Nor, as the court pointed out more than once, was there any record evidence as to how Chance did in fact go about designing the physical shape of the ErgoRoller, whether through testimony by Chiang (who was not even called as a witness), documents created during the design process, or anything else.  As recognized in the case law cited in the findings and rulings, this state of affairs further supports the inference that Chance did so by using the designs for the Free.[4]  Id. at 50-51.  Chance

---

[4]The court drew further support for this inference from the fact that "Chance was able to develop a working sample of the ErgoRoller by March 9, 2009, even though, as Mei-Ling Wang acknowledged, just to do research and development of a product would take approximately two years." Contour Design, 2011 DNH 214, 48-49.  Chance argues that this, too, "is contrary to the evidence," because Mei-Ling Wang "was discussing Contour's product design timeline--not product design timelines generally," and, while the "working sample" was "capable of being displayed . . . [f]ar more work was needed before Chance was able to ship the ErgoRoller to customers."  But the portions of her testimony cited by Chance do not contain these qualifications.

has not shown that the finding to that effect was clearly erroneous so that it figures to prevail on its appeal.

Second, Chance questions the significance of the court's finding that the ErgoRoller is similar to the Free.  Samples of both products were introduced into evidence and the court, after examining them in light of the testimony on this point, concluded that "[t]he dimensions of [the products] are similar . . . and the products have many of the same features," and proceeded to list those features.  Id. at 13-14.  Chance complains that, while "[a]t this level of generality and fuzziness, the basic, overall shape of both products is similar," that level of similarity cannot support the inference that the ErgoRoller was copied from the Free, especially in light of "practical limits on the length, width, height, thickness and similar physical dimensions of any [ergonomic mouse] product."

---

Moreover, there was also testimony by Frank Nien, Chance's moldmaker, that making the molds for a RollerMouse product would ordinarily take between eight and ten months, id. at 10, and evidence that Chance began serious efforts to market the product (including making commitments to sell it) within six months of when the "working sample" was introduced, id. at 12.  So there was evidence, aside from Mei-Ling Wang's testimony, that Chance was able to develop the ErgoRoller in less time than it had taken to develop the other ergonomic mouse products.  Finally, even if the evidence did indisputably refute this proposition (which, as just discussed, it does not), that fact alone would not make it clearly erroneous to find that Chance used the files from the Free to make the ErgoRoller, in light of the additional support for that finding just discussed.

9

The court appreciates that, if competing products look the same merely because they cannot be designed to look any different, that similarity in appearance does not provide strong support for the inference that one product was copied from the other.  Here, however, there is no evidence that the ErgoRoller, by virtue of being an ergonomic mouse, had to be designed to look and feel the same as the Free.  There is also, again, no evidence at all on how Chance arrived at the design for the Ergoroller, if it was not if fact copied from the Free.

On this record, it was reasonable for the court to infer, from the similarity between the products, that Chance had used the files used to make the Free in designing the ErgoRoller. Chance's attack on this inference, then, cannot sustain its appeal.  See Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995) ("In actions . . . tried to the court, the judge's findings of fact are to be honored unless clearly erroneous, paying due respect to the judge's right to draw reasonable inferences").

Regardless, even if Chance were likely to prevail in its challenge to this court's finding that Chance used Contour's confidential information to make the ErgoRoller, in breach of section 1 of the NDA, the permanent injunction against sales of that product rests on an independent basis:  that the ErgoRoller

is "derived from or based on" the Free, so that its sales violate section 3 of the NDA.  As the court noted in the findings and rulings, Chance did "not seriously dispute that the ErgoRoller is 'derived from or based on' the Free" at either the evidentiary hearing or in its filings beforehand.  Contour Design, 2011 DNH 214, 52.  Instead, Chance argued at length that section 3 could not be interpreted or enforced to reach the ErgoRoller, but the court rejected those arguments.  Id. at 51-66.

In its motion to stay, Chance does not suggest that it did in fact dispute whether the ErgoRoller is "derived from or based on" the Free, nor does it maintain that any of the arguments it actually made as to section 3 of the NDA is likely to carry the day on appeal.  Instead, in the three sentences it devotes to this subject, Chance states that the finding that the ErgoRoller is "derived from or based on" the Free was "premised primarily on . . . the twin notions that Free electronic files were used to design the ErgoRoller and the similarity of the products" and that, because these "notions" were incorrect, the finding that the ErgoRoller is derived from or based on the Free is wrong too.

As just discussed at length, Chance has not shown any error in either of those "notions."  That shortcoming aside, though, the court's finding that the ErgoRoller is derived from or based on the Free was based not only on the evidence that "the

11

dimensions, features, and mechanical functionality of the ErgoRoller are strikingly similar to those of the Free," but also on the fact that "Chance itself has described the Free as a 'former version' of the ErgoRoller."  Id. at 52.  That admission was contained in an email from Chance to one of its distributors, see id. at 15, and alone suffices to support the finding that the ErgoRoller is "derived from or based on" the Free.

Chance does not acknowledge this evidence in its motion to stay.  Accordingly, even if this court did clearly err in finding that Chance used the electronic files for the Free to create the ErgoRoller--an error which, as should be clear by now, this court does not believe it made--then Chance still has failed to show it will succeed in getting the permanent injunction overturned on appeal, because it has not even addressed the actual evidentiary basis for the court's finding that making the ErgoRoller violates section 3 of the NDA (or articulated any other reason why section 3 does not or cannot prevent it from making that product).

Finally, Chance challenges a particular provision of the permanent injunction, paragraph 5, requiring it to "immediately return to Contour all information, including but not limited to electronic CAD files, drawings, and related information, stored in any format, used to manufacture any of the Enjoined Products, together with all copies of any such information."  Chance

protests that this material "contains trade secrets and other proprietary information belonging to Chance."

In its objection to Contour's proposed permanent injunction, Chance argued that the provision that became section 5 was "overbroad" because, in relevant part, Chance "independently developed the ErgoRoller and has valuable trade secrets and other confidential information in [its] molds, CAD files, firmware, and other materials." But this court rejected this argument, based on its finding that "Chance did not 'independently develop' the molds for the ErgoRoller, but used Contour's confidential information to make them in breach of the NDA (and, again, Chance has never produced the 'CAD files' it claims to have used to make the molds)."[5]  Contour Design, 2011 DNH 214, 76.

As already discussed, Chance has failed to show any error in the finding that it used Contour's confidential information, i.e., the electronic files used to make the molds for the Free, to make the molds for the ErgoRoller. Nor does Chance point to any evidence in the record suggesting an independent source for the CAD files or any other materials used to create the

---

[5]The court did, however, strike the provision of the proposed injunction that would have required Chance to surrender the firmware used in the ErgoRoller, because Contour stipulated that this firmware was independently developed by Chance. 2011 DNH 214, 76.

ErgoRoller (aside from its firmware, which was specifically exempted from the scope of paragraph 5, see note 5, supra) and, as stated a number of times already, there is no such evidence.

So, as support for the argument in its motion to stay that the CAD files and other materials used to make the ErgoRoller were developed independently of the materials used to make the Free, Chance relies on a declaration from one of its directors, Frank Nien, that "the electronic CAD files, drawings, and related information relating to the ErgoRoller all contain Chance trade secrets.  That information was all created by Chance."  But, as the court observed more than once in the findings and rulings, Nien did not testify to that effect at either stage of the trial, id. at 14 n.3; 51 n.14, though he was called as a witness by Chance during the jury phase of the trial, and was present in the courtroom during the subsequent evidentiary hearing.  Nor, again, did Chance try to introduce any of the CAD files, drawings, or any other information used to make the ErgoRoller.

Chance provides no explanation how, in considering its likely success on appeal from findings entered after a trial, this court could consider evidence that was never presented at the trial, especially when Chance easily could have presented it.  Chance will almost certainly not be allowed to rely upon such evidence on appeal.  See, e.g., United States v. Kobrosky, 711

F.2d 449, 457 (1st Cir. 1983) (rejecting "newly-emergent affidavit" submitted for the first time on appeal with the explanation that "evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before us" and admonishing counsel that "any repetition of this sort of unprofessional conduct will not be tolerated"); see also Fifteen Thousand Eight Hundred and Forty-Four Welfare Recipients v. King, 610 F.2d 32, 35 n.1 (1st Cir. 1979) (rejecting challenge to district court's factual finding because that challenge was based on evidence not in the record).

So Nien's affidavit figures to be of no help to Chance on appeal. In any event, the affidavit suffers from the same crucial deficiency that has plagued Chance's many presentations of its argument that it independently developed the ErgoRoller. Nien merely states that Chance created the CAD files and other materials, without explaining the process in any way. And Nien does not even go so far as to say that, in creating those materials, Chance did not use any of Contour's confidential information. Even if he had, moreover, the evidence of record makes such an assertion impossible to credit, for the reasons stated at length in the findings and rulings. Contour Design, 2011 DNH 214, 47-51. Indeed, to accept Chance's position is to believe that it scrupulously avoided using Contour's confidential

15

information to make the ErgoRoller while nearly simultaneously--and admittedly--using Contour's confidential information to make other competing products.  See id. at 12, 20-23.  Accordingly, Chance has not shown that it is likely to succeed in having paragraph 5 of the injunction, requiring it to surrender to Contour the electronic CAD files and related materials used to make the ErgoRoller, overturned on appeal, or for that matter, on any aspect of its appeal from that order.

For that reason alone, Chance's motion to stay the injunction pending appeal must be denied, because a likelihood of success on appeal is essential to that relief under Rule 62(c).  See 11 Wright, supra, § 2904, at 502-05.  Furthermore, while Chance also argues that the other factors at play in deciding to stay an injunction pending appeal (irreparable injury to it absent the stay, substantial injury to Contour if the stay is granted, and the public interest) favor granting its motion, this court disagrees, for essentially the same reasons this court found those factors to weigh in favor of granting the injunction in the first place.[6]  See Contour Design, 2011 DNH 214, 66-73.  Chance's motion to stay is denied.

---

[6] In arguing to the contrary, Chance again relies on statements in Nien's declaration to which he never testified at trial, and which attest to facts (e.g., that the ErgoRoller is Chance's only product) that lack any other record support.

16

**<u>Motion to clarify</u>**

As an alternative to staying the permanent injunction, Chance also seeks to clarify it in one respect. Paragraphs 3 and 4 of the injunction, in relevant part, require Chance to "recall any orders in transit for any of the Enjoined Products" and to "recall from any and all distributors all inventory of any of the Enjoined Products." Chance argues that these provisions are confusing in light of this court's statement in the findings and rulings that they "do not raise any of the concerns Chance raises over having to recall a product from customers." Id. at 75. Instead, as the court explained, these provisions were directed at "stopping the offending products from reaching their end users" in the first place. Id.

As Chance points out, the findings and rulings thus "distinguished between 'distributors,' from whom a recall is required, and 'customers,' from whom a recall is apparently <u>not</u> required." In the court's view, there is nothing "apparent" about it: the permanent injunction expressly requires Chance to "recall from any and all <u>distributors</u> all inventory of any of the Enjoined Products." It says nothing about recalls from "customers," i.e., end users of the products.

Chance may be suggesting that it does not understand this aspect of the injunction because Chance's customers <u>are</u>

distributors (which is what the evidence of record tends to show). If that is the case, then Chance must recall any inventory of the enjoined products from those persons, because they are distributors and not end users. Again, that is what the permanent injunction, by its terms, specifically requires--that Chance recall the Enjoined Products from its distributors. In light of this express language, Chance's request to clarify the injunction is difficult to understand but, in any event, it is granted to the extent this order helps to clarify that one.[7]

**Conclusion**

For the foregoing reasons, Chance's motion to stay or, in the alternative, to clarify[8] the permanent injunction is DENIED as to the stay but GRANTED as to the clarification to the extent described herein.

---

[7] The court also notes that paragraph 3 of the preliminary injunction, entered in this action more than a year ago, required Chance to "recall from any distributors and retailers all inventory" of certain products, and Chance never claimed not to understand what that meant (and, in fact, told both Contour and the court that Chance was in compliance with the preliminary injunction).

[8] Document no. 230.

**SO ORDERED.**

/s/ Joseph N. Laplante
_____
Joseph N. Laplante
United States District Judge

Dated: January 11, 2012

cc: Lawrence L. Blacker, Esq.
 Peter G. Callaghan, Esq.
 Daniel H. Fingerman, Esq.
 Daniel S. Mount, Esq.
 Kathryn G. Spelman, Esq.
 Kevin M. Pasquinelli, Esq.