```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Contour Design, Inc.

    v.                                    Civil No. 09-cv-451-JL

Chance Mold Steel Co., Ltd.
and EKTouch Co., Ltd.

## SUMMARY ORDER

    A jury found in favor of plaintiff Contour Design, Inc. on all of its claims in this action against defendants Chance Mold Steel Co., Ltd. and EKTouch Co., Ltd., including Contour's claim that the defendants had misappropriated its trade secrets in violation of New Hampshire's version of the Uniform Trade Secrets Act, N.H. Rev. Stat. Ann. § 350-B.  In addition to compensatory damages, which were awarded by the jury here, the Act provides for additional relief in cases of "willful and malicious misappropriation," including an award of "reasonable attorneys' fees to the prevailing party."  Id. § 350-B:4, II.

    Prior to trial, the parties agreed that whether the defendants had engaged in willful and malicious misappropriation was for the court, not the jury, to decide, so they submitted proposed findings and rulings on that issue.  Based on the evidence received at the jury trial, as well as additional evidence received at a subsequent evidentiary hearing, the court found that the defendants had engaged in willful and malicious

misappropriation, Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 214, 31-37, and that, as a result, Contour was entitled to an award of its reasonable attorneys' fees, id. at 43. So the court set deadlines for Contour to file its fee application, together with all supporting documentation, and for Chance to file an objection. Id. at 77.

The court also directed that judgment enter for Contour on all counts of its amended complaint. Id. After this occurred, the defendants appealed the judgment to the court of appeals, where the case is pending. Contour Design, Inc. v. Chance Mold Steel Co., Ltd., No. 12-1185 (1st Cir. Feb. 7, 2012). Contour then duly filed its application for attorneys' fees in this court. When the time came for the defendants to respond, however, they filed a "notice of non-objection," stating that they did not "currently object to Contour's Application For Attorney Fees," but that they "reserve[d] their rights to challenge Contour's entitlement to receive attorney fees and the amount of fees both on direct appeal and in this court if this court's rulings are altered by this court or on appeal."

"The Supreme Court has admonished that, where a party opposing a motion for fees fails to submit 'any evidence challenging the accuracy and reasonableness' of the facts asserted in connection with a supported fee request, that failure

may amount to a waiver of the right to challenge the district court's determination regarding the reasonableness of the request." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16-17 (1st Cir. 2012) (quoting Blum v. Stenson, 465 U.S. 886, 892 n.5 (1984)).  As far as this court is concerned, the defendants have done just that by failing to submit anything in response to Contour's fee application.  While they purport to "reserve their rights" to challenge "the amount of fees" depending on the outcome of their appeal, they do not explain why they should be able to hold off on responding to Contour's fee application just in case they happen to prevail on their (presumed) claim that this court erroneously ruled that Contour was entitled to attorneys' fees in the first place.[1]

In any event, the court finds the amount of fees that Contour seeks in its application, $1,495,336.64, to be

---

[1] They do not, for example, ask this court to stay its decision on the fee award until their appeal is decided.  This court cannot imagine any possible grounds for that relief anyway, in light of the strong (indeed, overwhelming) evidence that the defendants' misappropriation of Contour's trade secrets was willful and malicious.  See Contour Design, 2011 DNH 214, at 31-37 (reviewing essentially uncontested evidence that defendants "embarked on a conscious effort to exploit the end of [their] long-term relationship" with Contour by providing infringing products to its competitor, engaged in efforts to conceal their misappropriation, and exhibited ill will toward Contour as well as a "disrespectful--if not contemptuous--attitude toward this court's preliminary injunction" that they stop distributing the infringing products).

"reasonable attorneys' fees" under § 350-B:4, II.  Under New Hampshire law, "[r]elevant factors in the determination of reasonable fees include the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed upon his client."  Bianco, P.A. v. Home Ins. Co., 147 N.H. 249, 251 (2001) (quoting Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 296 (1977)).

Here, these factors all support the conclusion that Contour has requested a reasonable amount of fees.  First, the amount involved in this litigation was significant, as reflected by the fact that Contour sought--and received--$7.7 million in compensatory damages, as well as twice that amount in exemplary damages.  Second, while the litigation did not necessarily involve any novel questions of law, it was complex in that the trade secrets at issue were embodied in sophisticated technology, including computer firmware, spanning a number of different products.  The litigation was also difficult in its intensity: it comprised separate motions for a temporary restraining order and a preliminary injunction (and the latter necessitated a full-day evidentiary hearing), a motion for contempt of the injunction, several discovery disputes, cross-motions for summary

4

judgment, a number of pretrial motions in limine (including one challenging one of the defendants' designated expert witnesses), a six-day jury trial, a subsequent evidentiary hearing (precipitated by motion practice on the defendants' ability to present previously undisclosed evidence), and a litany of challenges to the propriety of permanent injunctive relief. Indeed, in resolving these disputes, this court held at least nine separate hearings or conferences (not including the jury trial) and issued seven different memorandum orders encompassing some 234 pages (including Magistrate Judge McCafferty's recommended decision on Contour's motion for preliminary injunction, but not including many other brief orders on procedural matters).[2]

Third, based on their written presentations and, in particular, their conduct of the trial, this court found Contour's counsel to be highly skilled and effective. The materials submitted with Contour's fee application show the various billing rates of each of the different attorneys who appeared on its behalf to be commensurate with his or her

---

[2] This case was so intensely litigated despite the fact that it was quite one-sided, as the court noted in ruling that Contour should receive the full amount of exemplary damages authorized by § 350-B due to the defendants' willful and malicious misappropriation. Contour Design, 2011 DNH 214, 40-41.

experience and role in the litigation.  Fourth, the supporting materials also show that these billing rates, while high, do not exceed what is customary for work of this type by attorneys of this level of experience, ability, and reputation.  Fifth, these materials further show that the time devoted to this litigation was substantial.  Sixth, and importantly, the ultimate result that counsel obtained for Contour was exceptional:  the jury found in its favor on all of its claims and awarded it the full amount of the compensatory damages it requested, the defendants' counterclaim was rejected, and the court went on to find in Contour's favor on its claims for non-jury relief as well.

 Based on these factors, the court finds Contour's requested fee to be reasonable.  This conclusion draws additional support from the fact that, as Contour points out in its fee application and supporting materials, much of counsel's work was billed to Contour at discounted rates--including an overall 20% discount on nearly all the work done by its law firm--and those discounts are reflected in the $1,495,336.64 figure.  Furthermore, Contour does not seek reimbursement for the time that three of its eight attorneys spent during the jury trial, nor any of the time expended in defending against the defendants' interlocutory (and unsuccessful) appeal from the preliminary injunction.

Accordingly, this court GRANTS Contour's application for attorneys' fees and related expenses (document no. 241) in full.

**SO ORDERED.**

$\underline{\hspace{3in}}$
Joseph N. Laplante
United States District Judge

Dated:  March 15, 2012

cc:  Lawrence L. Blacker, Esq.
     Peter G. Callaghan, Esq.
     Daniel H. Fingerman, Esq.
     Daniel S. Mount, Esq.
     Kathryn G. Spelman, Esq.
     Kevin M. Pasquinelli, Esq.