```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Contour Design, Inc.

    v.                                                    Civil No. 09-cv-451-JL

Chance Mold Steel Co., Ltd.
and EKTouch Co., Ltd.

## SUMMARY ORDER

Following a six-day trial in May 2011, a jury in this court awarded the plaintiff, Contour Design, Inc., $7.7 million in damages. The jury found that the defendants, Chance Mold Steel Co., Ltd., and EKTouch Co., Ltd. (collectively, "Chance") had misappropriated Contour's trade secrets, and that Chance had also breached a non-disclosure agreement with Contour (the "NDA").

This court later doubled this damages award, and also awarded Contour nearly $1.5 million in attorneys' fees, based on the court's finding that Chance's misappropriation was "willful and malicious" under New Hampshire's version of the Uniform Trade Secrets Act, N.H. Rev. Stat. Ann. § 350-B. Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 214, 31-43. In the same order, this court entered a permanent injunction that, among other things, prevented Chance from selling products in breach of the NDA, including a product known as the "ErgoRoller." Id. at 44. The injunction also required Chance to recall any orders for

those products that had yet to reach their end-users and to surrender, to Contour, certain information used to design or manufacture those products.  Id. at 75-76.

Chance asked this court to stay the injunction pending appeal, but this court denied the request.  Contour Design, Inc. v. Chance Mold Steel Co., No. 09-451, 2012 WL 82864 (D.N.H. Jan. 11, 2012).  Chance did not appeal this court's denial of its motion to stay, nor, after filing its appeal, did Chance ask the Court of Appeals to enter a stay.  Chance also did not ask this court to require Contour to post security for the injunction pending appeal.  Instead, Chance says, it complied with the permanent injunction.

Chance appealed aspects of both the jury's damages award and the permanent injunction.  Chance did not, however, challenge this court's finding of willful and malicious misappropriation. Chance attempted to challenge the jury's award of damages, as the product of an erroneous jury instruction, but the court of appeals rejected that argument.  Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 693 F.3d 102, 112 (1st Cir. 2012).  Chance also appealed the permanent injunction insofar as it applied to the "Ergoroller."  This aspect of Chance's appeal succeeded, as the Court of Appeals ruled that this court had erred in finding that Chance's manufacture of the ErgoRoller amounted to a breach

of two different provisions of the NDA.  Id. at 108-112.  So the Court of Appeals reversed the permanent injunction as applied to the ErgoRoller, but otherwise affirmed the injunction, and the jury verdict.  Id. at 113.  The court remanded the case here "for further proceedings consistent with [its] opinion."  Id.

Following remand, more than four months passed without either party asking this court to take any further action.  On its own initiative, this court entered an amended judgment for nearly $16.9 million (including the jury's award of damages, doubled, and an award of attorneys' fees, but not including pre- or post-judgment interest).  Order of Jan. 7, 2013.  In accordance with the decision by the Court of Appeals, this court also modified the permanent injunction so it no longer applied to the ErgoRoller.  Id.

Chance responded by filing a "motion to alter judgment and for new trial," seeking this relief for three stated purposes:

> (1) to refigure the damages awarded by the jury, "excluding categories that result from sales and marketing of the ErgoRoller";
>
> (2) "to recover the damages suffered and the benefits conferred upon Contour during the pendency of" the permanent injunction, as well as a temporary restraining order issued at the beginning of the litigation, in January 2010; and
>
> (3) "to address Contour's possession and use of Chance's trade secrets, which Contour obtained as a result" of the permanent injunction's requirement that

>Chance turn over to Contour the information used to
>design or make the ErgoRoller.

At this point, however, Chance is simply barred from obtaining this relief, with the possible exception of restitution for the benefit that Chance claims to have conferred by providing its trade secrets to Contour in response to the permanent injunction. But Chance is almost certainly barred from seeking restitution, an equitable remedy, by its own unclean hands in its dealings with Contour--namely, Chance's willful and malicious misappropriation of Contour's trade secrets.

**Jury's award of damages**

First, Chance cannot revise the jury verdict at this stage in the proceedings.  The Court of Appeals specifically noted, in fact, that "[w]hile the damages award encompassed Contour's lost sales as a result of the marketing of the ErgoRoller, on appeal Chance makes no challenge to the damages award on this basis." Contour Design, 693 F.3d at 106 n.4.  Chance's decision not to mount that challenge then prevents it from doing so now, because "a party ordinarily cannot raise for the first time on remand issues that it could have and should have litigated on the original appeal."  United States v. Bryant, 643 F.3d 28, 33 (1st

4

Cir. 2011); see also, e.g., United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993).[1]

**Injunction-based damages**

Second, as the Court of Appeals has recognized, "a party injured by the erroneous issuance of an injunction 'has no action for damages in the absence of a bond.'" Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc., 925 F.2d 6, 10 (1st Cir. 1991) (quoting W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983)); see also, e.g., 11A Charles Alan Wright et al., Federal Practice & Procedure § 2973, at 463 (2d ed. 1995). As already noted, Chance never asked this court (or the Court of Appeals) to require Contour to post a bond as security for any damages Chance suffered in complying with the

---

[1]Courts may exercise their discretion to entertain such a challenge in "exceptional circumstances." Bell, 988 F.2d at 251. To show the existence of exceptional circumstances, however, a party urging consideration of an issue for the first time on remand must "show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Id. Chance has not tried to make any of those showings here. In any event, this court is unaware of any new law or new evidence, and it was not "blatant error" for the jury to award damages to Contour based on sales of the ErgoRoller because, as the Court of Appeals noted, "the evidence before [this] court at the hearing on the injunction with respect to the ErgoRoller was different than [*sic*] the evidence presented to the jury for the award of damages." Contour Design, 693 F.3d at 106 n.4.

5

injunction, in the event it were overturned on appeal. So Chance cannot recover the "out-of-pocket expenses as well as lost sales and profits, lost customers, and lost market share" it claims to have incurred by complying with the permanent injunction's direction to recall shipments of the ErgoRoller, and to stop manufacturing, marketing, and selling it. See Buddy Sys., Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1166-67 (9th Cir. 1976) (ruling that, in the absence of a bond, a party could not recover the damages it allegedly suffered as the result of a permanent injunction--later reversed on appeal--that prevented it from making or selling a product).[2]

**Restitution**

While "[t]he absence of a bond usually prevents an aggrieved party from recovering damages for the issuance of an injunction," as just stated, "[t]here are exceptions to this general

---

[2]This reasoning applies with the same force to Chance's attempt to recover damages it claims to have suffered by complying with this court's temporary restraining order, which prevented Chance from selling or marketing--but not making--the ErgoRoller between January 6, 2010 and January 20, 2010. Order of January 6, 2010. Unlike the permanent injunction, the TRO required Contour to post a bond, which it did, by depositing $50,000 in cash with the court, on January 8, 2010. While the bond remained on deposit after this court issued a preliminary injunction (which did not apply to the ErgoRoller), the bond was ultimately released to Contour, with prior notice to, but no objection from, Chance, after the Court of Appeals affirmed the preliminary injunction. See Order of Aug. 18, 2011.

proposition . . . . [E]ven if no bond has been posted, plaintiff may still be liable for any unjust enrichment that has resulted during the period the injunction was in effect." 11A Wright, supra, § 2973, at 463; see also, e.g., Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust, 824 F.2d 765, 766-67 (9th Cir. 1987). As Chance points out, the Court of Appeals has recognized this "unjust enrichment" exception to the "injunction bond rule," giving effect to the "adage 'that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby.'" Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 873 (1st Cir. 1995) (quoting Arkadelphia Milling Co. v. St. Louis S.W. Ry., 249 U.S. 134, 145 (1919)); see also Restatement (Third) of Restitution & Unjust Enrichment § 18, at 244 (2011).

But the Court of Appeals has expressly cautioned that such "[r]estitution is not a matter of right, but a matter of sound equitable discretion," and, indeed, "a remedy ex gratia that a court will withhold when the justice of the case does not call for it." Texaco P.R., 60 F.3d at 874 (quotation marks omitted). In particular, under the "unclean hands" doctrine, "[r]ecovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable

7

conduct in the transaction that is the source of the asserted liability."  Restatement (Third) of Restitution & Unjust Enrichment § 63, at 486.

The transaction between Contour and Chance that resulted in the permanent injunction stands out for Chance's inequitable conduct, as chronicled in this court's subsidiary findings of fact supporting its finding of willful and malicious misappropriation (which, again Chance has never challenged). Contour Design, 2011 DNH 214, 31-33.  After serving as the exclusive manufacturer of Contour's computer mouse products for 13 years, Chance "embarked on a conscious effort to exploit the end of this long-term relationship" by "willingly--if not enthusiastically" joining in a "clandestine campaign to take Contour's customers by selling them unauthorized versions of the products [Contour] had developed (and which had been made by misappropriating Contour's trade secrets)."  Id. at 31-32.  This campaign included "a series of efforts to obscure the source" of the infringing products, and persisted even after this court issued a preliminary injunction against the sales of those products.  Id. at 32-33.  (And this is not an exhaustive list).

So it is extraordinarily difficult to fathom how Chance could qualify for any equitable relief against Contour, even if Contour did erroneously gain access to some of Chance's trade

secrets as a result of the permanent injunction.[3]  Indeed, as a result of its willful and malicious misappropriation of Contour's trade secrets, Chance owes Contour in excess of $17 million in damages.  But that has not stopped Chance, in its most recent motion, from casting itself as the victim here.  Suffice it to say that this court finds the performance less than convincing.

Furthermore, there is no indication that Chance has paid, or made arrangements to pay, anything toward the $17 million judgment, and both the record evidence and off-the-record comments by Chance's counsel suggest that it has no reasonable prospect of coming anywhere close to satisfying that award.  Yet Chance proposes to diminish whatever assets it has to litigate an unjust enrichment claim against Contour that, even if successful, would accomplish nothing more than a relatively trivial offset against Chance's staggering liability to Contour.  This approach, of course, will also force Contour to incur additional expenses in defending the claim, adding to the nearly $1.5 million in attorneys' fees it has already incurred in this action.

---

[3]Contour vehemently denies this, and has submitted affidavits from two different witnesses attesting that the materials Chance surrendered in response to the permanent injunction, insofar as they pertained to the ErgoRoller, consisted solely of "some pictures of models of" the product. Chance, however, maintains through its own affiant that the materials included "highly detailed drawings and other proprietary information about the ErgoRoller."

Before forcing Contour (and, for that matter, this court) to expend further resources to litigate Chance's unjust enrichment claim, Chance shall show cause why any such claim is not barred by its unclean hands. See Restatement (Third) of Restitution & Unjust Enrichment § 63, at 486. This showing shall take the form of a memorandum, not to exceed 25 pages, exclusive of any affidavits or other supporting materials. The memorandum shall be filed within 30 days of the date hereof. Contour may, but need not, file a responsive memorandum, also not to exceed 25 pages exclusive of supporting materials, within 14 days of Chance's filing. No reply shall be permitted.

For the foregoing reasons, Chance's "motion to alter judgment and for a new trial" (document no. 253) is TAKEN UNDER ADVISEMENT as to the unjust enrichment claim, pending Chance's opportunity to show cause as ordered, but is otherwise DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 14, 2013

cc: Lawrence L. Blacker, Esq.
    Peter G. Callaghan, Esq.
    Daniel H. Fingerman, Esq.
    Daniel S. Mount, Esq.
    Kathryn G. Spelman, Esq.
    Kevin M. Pasquinelli, Esq.