```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Contour Design, Inc.

    v.                                                     Civil No. 09-cv-451-JL

Chance Mold Steel Co., Ltd.
and EKTouch Co., Ltd.

## SUMMARY ORDER

The defendants, Chance Mold Steel Co., Ltd. and EKTouch Co., Ltd. (collectively, "Chance"), filed a motion "to alter or amend judgment and for a new trial," see Fed. R. Civ. P. 59, seeking, among other relief, to assert a claim for restitution, which arose subsequent to, and as a result of, this court's original judgment in this case. In a recent order, this court denied the motion as to the other relief it sought, but took the motion under advisement as to the equitable restitution claim, directing Chance to show why that claim was not barred by Chance's unclean hands. Contour Design, Inc. v. Chance Mold Steel Co., No. 09-451, 2013 WL 2102149 (D.N.H. May 14, 2013). As explained fully below, Chance has failed to make that showing.

## Background

Following a six-day jury trial, and an additional two-day evidentiary hearing, this court entered a permanent injunction preventing Chance from making or selling certain ergonomic computer mouse products, ruling that this was in breach of a non-

disclosure agreement ("NDA") between Chance and the plaintiff, Contour Design, Inc.  Contour Design, Inc. v. Chance Mold Steel Co., 2011 DNH 214, 44-56.  This was after the jury found that, by making and selling such products, Chance had not only breached the NDA, but also misappropriated Contour's trade secrets in violation of New Hampshire's version of the Uniform Trade Secrets Act, N.H. Rev. Stat. Ann. § 350-B.  The permanent injunction also required Chance to recall any orders for the specified products that had yet to reach their end-users and to surrender, to Contour, particular information used to design or manufacture those products.  Id. at 75-76.

Chance appealed the injunction to the Court of Appeals for the First Circuit, but only insofar as it applied to one of the products, known as the "ErgoRoller" (and also insofar as its ban on making or selling other products extended until June 15, 2015, the expiration date of the NDA).  Chance had asked this court to stay the injunction pending appeal, but the court denied that request, Contour Design, Inc. v. Chance Mold Steel Co., No. 09-451, 2012 WL 82864 (D.N.H. Jan. 11, 2012), and Chance did not ask the Court of Appeals for a stay.  Instead, Chance says, it complied with the permanent injunction by, among other things, surrendering "highly detailed drawings and other proprietary

2

information about the ErgoRoller" to Contour, in the form of files contained on a CD.

In September 2012, the Court of Appeals ruled that this court had erred in finding that Chance had manufactured the ErgoRoller in violation of the NDA, and, therefore, in extending the permanent injunction to that product. Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 693 F.3d 102, 108-12 (1st Cir. 2012). But the Court of Appeals otherwise affirmed the permanent injunction--as well as the jury's decision awarding Contour $7.7 million in damages. Id. at 112-13. The Court of Appeals remanded the case "for further proceedings consistent with [its] opinion." Id. at 113.

Following a period of more than four months where neither party asked this court to take any action, this court, sua sponte, directed the clerk to enter an amended judgment in Contour's favor for nearly $16.9 million. Order of Jan. 7, 2013. This sum reflected the jury verdict, doubled to impose enhanced damages for what this court--in a finding that Chance did not challenge on appeal--found to be Chance's "willful and malicious" misappropriation under the Trade Secrets Act. Contour Design, 2011 DNH 214, 31-43. The sum also reflected an award to Contour of nearly $1.5 million in attorneys' fees, as further authorized by the Act in cases of willful and malicious misappropriation.

Contour Design, Inc. v. Chance Mold Steel Co., No. 09-451, 2012 WL 893416 (D.N.H. March 15, 2012). As part of the amended judgment, the court modified the permanent injunction so that it no longer applied to the ErgoRoller. Order of Jan. 7, 2013.

Chance then filed a motion "to alter or amend judgment and for a new trial" for three stated purposes: (1) to refigure the damages awarded by the jury, "excluding categories that result from sales and marketing of the ErgoRoller," (2) "to recover the damages suffered and the benefits conferred upon Contour during the pendency of" the permanent injunction, and (3) "to address Contour's possession and use of Chance's trade secrets, which Contour obtained as a result" of the permanent injunction's requirement that Chance turn over to Contour the information used to design or make the ErgoRoller. After receiving extensive briefing from the parties, including a reply and sur-reply, this court issued a written order denying the motion in part and taking the rest under advisement. Contour Design, 2013 WL 2102149. Specifically, the court ruled that Chance could not attack the jury's award of damages for the ErgoRoller for the first time on remand, when Chance had not done so on appeal, nor could Chance seek damages it claimed to have suffered by ceasing sales of the ErgoRoller as directed by the permanent injunction,

since Chance had never sought to make Contour post a bond as security against such damages.  Id. at *2.

While the lack of a bond did not prevent Chance from seeking restitution for the benefit it allegedly conferred by providing its claimed trade secrets to Contour in response to the permanent injunction, the court ruled that "Chance is almost certainly barred from seeking restitution, an equitable remedy, by its own unclean hands in its dealings with Contour--namely, Chance's willful and malicious misappropriation of Contour's trade secrets."  Id.  Thus, the court ordered, "[b]efore forcing Contour (and, for that matter, this court) to expend further resources to litigate Chance's unjust enrichment claim, Chance shall show cause why any such claim is not barred by its unclean hands."  Id. at *4.  The court allowed Chance 30 days to make this showing, by way of a memorandum not to exceed 25 pages, exclusive of any affidavits or other supporting materials.  Id.

In response, Chance filed a three-page memorandum, unaccompanied by any supporting materials.  The memorandum makes two arguments as to why Chance's unclean hands do not bar its claim for restitution for providing its alleged trade secrets to Contour in response to the injunction.  Both are without merit.

**Relationship to the controversy**

First, Chance emphasizes, this court's finding "that Chance acted with willfulness and malice in misappropriating Contour's trade secrets . . . was based solely on products that Chance actually copied from earlier Contour products and the way in which those [copied] products were sold," as opposed to the ErgoRoller.  Thus, Chance says, its inequitable conduct in willfully and maliciously misappropriating Contour's trade secrets by making those other products cannot bar Chance from restitution for providing Contour with the alleged trade secrets used to make the ErgoRoller (which, as the Court of Appeals ruled, was not created independently of Contour's confidential information).  This argument depends on far too narrow a view of the nexus between the equitable claim and the inequitable conduct necessary to implicate the doctrine of unclean hands.

As Chance recognizes, "unclean hands only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'"  Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 873 (1st Cir. 1995) (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1919)).  Chance's willful

6

and malicious misappropriation of Contour's trade secrets for its other ergonomic mouse products readily satisfies this test.

The controversy between the parties erupted when Contour learned that Chance, which had been manufacturing computer mouse products for Contour since 1995, had, for the first time during that relationship, revealed its plan to market its own computer mouse product: the ErgoRoller. Contour Design, 2011 DNH 214, 15-16. After Contour subsequently stopped placing orders with Chance, Chance began selling its own versions of the computer mouse products it had made for Contour, but under different names--and after taking steps to conceal that it had used Contour's trade secrets to make those products. Id. at 20-24. It was this conduct (together with certain other circumstances of Chance's sale of these products) which the court found to amount to willful and malicious misappropriation. Id. at 31-34. Significantly, Chance mounted this "clandestine campaign to take Contour's customers by selling them unauthorized versions of the products it had developed and which had been made by misappropriating Contour's trade secrets," id. at 32 (parenthesis omitted), in March 2010, id. at 20, which was the very same time it began selling the ErgoRoller, id. at 12. Chance sold the ErgoRoller to a Swedish distributor, Gunnar Drouge, id., who was the very same man who had encouraged Chance to surreptitiously

provide him with unauthorized versions of Contour's other ergonomic mouse products on a schedule that would maximize the competitive harm to Contour, id. at 17-20.

These findings (which Chance has never challenged) establish a "direct relationship" between Chance's willful and malicious misappropriation of Contour's trade secrets and "the merits of the controversy between the parties" and, therefore, that Chance's inequitable conduct toward Contour bars it from seeking equitable relief against Contour.  As Chance itself points out, while "equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy at issue."  Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814-15 (1945) (quotation marks and citations omitted).  As just discussed, Chance has not acted "fairly or without fraud and deceit as to the controversy at issue"--which, contrary to Chance's suggestion, is not limited to its surrender of its alleged trade secrets for the ErgoRoller to Contour as ordered by the permanent injunction, but encompasses the entirety of the dispute between the companies as to Chance's right to make various ergonomic mouse products that was resolved through this litigation.

Contour provides no authority for its exceedingly narrow definition of the relevant "controversy" for purposes of applying the unclean hands doctrine. Of the cases it cites, in fact, all but one actually upheld the use of the doctrine, ruling that the inequitable conduct was sufficiently related to the controversy at issue. See Keystone Driller, 290 U.S. at 246-47 (claimant's efforts to suppress evidence suggesting the invalidity of one patent embodied in a machine, including procurement of a perjured affidavit, barred claims for infringement of other patents embodied in the same machine); Texaco P.R., 60 F.3d at 880 (claimant's inequitable conduct was "part of the same overall course of conduct that led to the [claimant's] push for restitution" and therefore mitigated against that relief).[1]

The sole case which Chance cites that came to the opposite conclusion is not helpful to its position either. See New Eng. Patriots Football Club, Inc. v. Univ. of Colo., 592 F.2d 1196 (1st Cir. 1979). There, the Court of Appeals rejected the argument that the New England Patriots could not enjoin the University of Colorado from hiring away the Patriots' head coach,

---

[1] Two other cases that Chance cites also applied unclean hands to bar or limit equitable relief, but without specifically considering whether the inequitable conduct was sufficiently related to the controversy at issue. See Precision Instrument, 324 U.S. at 816-20; Oxford Global Resources, Inc. v. Guerriero, No. 03-12078, 2003 WL 23112398, at *12-*13 (D. Mass. Dec. 30, 2003). So these cases do not support Chance's position either.

9

in breach of his contract with the Patriots, due to their alleged unclean hands in hiring the coach away from his prior employer, the University of Oklahoma, in breach of his contract with that program--which happened nearly six years before Colorado attempted to hire the coach away from the Patriots. Id. at 1199. As the court explained, "[b]oth parties may have done the University of Oklahoma dirt" (Colorado, presumably, in the course of its rivalry with Oklahoma in what was then the Big Eight Conference) "but that does not mean unclean hands with respect to the 'controversy at issue.'" Id. (quoting Precision Instrument, 324 U.S. at 815). But the proposition that a claimant's inequitable conduct toward a third party, several years earlier, counts as a different "controversy" for purposes of the unclean hands doctrine does not assist Chance, whose inequitable conduct was toward the same party, at the same time, and involved the same industry and product line.

Indeed, unclean hands applies when the equitable clamaint's "improper conduct is directed at [the respondent] and relates to the subject matter of the action." See 11A Charles Alan Wright, et al., Federal Practice & Procedure § 2946, at 110 (2d ed. 1995) (footnote omitted). Again, that test is readily satisfied here. Chance is wrong that its willful and malicious misappropriation of the trade secrets used to make Contour's ergonomic mouse

products is part of a different "controversy" from that giving rise to its claim for restitution based on the alleged trade secrets used to make the ErgoRoller.

**Contour's conduct**

Second, Chance argues that this court cannot apply the unclean hands doctrine for the benefit of Contour because the "doctrine is a double-edged sword; the party that asserts the defense cannot have materially soiled hands." Oxford Global, 2003 WL 23112398, at *13. Chance asserts that, when Contour provided the CD allegedly containing its trade secrets to Contour's senior product designer, as well as to another person outside the company, it engaged in an "intentional misappropriation of trade secrets [that] appears to be at least as willful and malicious as any of which Chance was accused."

By the time Contour engaged in this conduct, however, this court had already issued the permanent injunction requiring Chance to surrender the information used to make the ErgoRoller to Contour, based on the finding that it was derived from confidential information that belonged to Contour, rather than to Chance. Contour Design, 2011 DNH 214, 75-76. While the Court of Appeals later overturned that finding, Contour can hardly be faulted for using and disclosing information that a court had decreed to be its property, particularly in light of Chance's

11

failure to ask the Court of Appeals to stay the permanent injunction pending its decision. In any event, Contour's court-sanctioned behavior was simply not "more unconscionable than that committed by" Chance so as to restrict the use of the unclean hands doctrine for Contour's benefit.[2] See 11A Wright, supra, § 2946, at 112.

**Conclusion**

For the foregoing reasons, Chance's "motion to alter judgment and for a new trial" (document no. 253), which was taken under advisement as to Chance's claim for restitution, is now DENIED in its entirety. Chance has failed to show cause that the claim is not barred by its unclean hands.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 22, 2013

---

[2] Chance asserts that "[t]he extent of Contour's misappropriation cannot be known without discovery." But no amount of discovery can change the undisputed fact that, when Contour used or disclosed the information on the CD, this court's permanent injunction requiring Chance to surrender that information to Contour was in effect, as was the finding that the information belonged to Contour, not Chance.

```
cc:   Lawrence L. Blacker, Esq.
      Peter G. Callaghan, Esq.
      Daniel H. Fingerman, Esq.
      Daniel S. Mount, Esq.
      Kathryn G. Spelman, Esq.
      Kevin M. Pasquinelli, Esq.
```